UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELLY M.,[1]

           Plaintiff,    Case # 19-cv-01684

v.                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

## INTRODUCTION

On October 4, 2016, Plaintiff Kelly M. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 60. The Social Security Administration (the "SSA") denied her claim on February 2, 2017, and Plaintiff appeared at a hearing before Administrative Law Judge Benjamin Chaykin (the "ALJ") on October 16, 2018. Tr. 61-65, 28-48. At the hearing, Plaintiff and Susan D. Roche, a vocational expert, testified. Tr. 28-48. On February 20, 2019 the ALJ issued an unfavorable decision. Tr. 15-23. The Appeals Council denied Plaintiff's request for review on November 25, 2019, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

**I.     District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.    Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step

one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 9,

2016, the alleged disability onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff has the

following severe impairments: affective disorder, anxiety disorder, attention deficit disorder

(ADHD), and obsessive-compulsive disorder (OCD).  *Id.*  The ALJ also found that Plaintiff suffers

from the following non-severe impairments: vision issues, tendinitis, bursitis, a history of

hypothyroidism, asthma, wrist and shoulder pain, gastric reflux, vitamin D deficiency, and obesity.

Tr. 17-18.  The ALJ determined that the treatments for those non-severe physical conditions were

minimal and the impairments have not resulted in any significant symptoms.  *See* Tr. 18.

At step three, the ALJ found that the Plaintiff does not have an impairment or combination

of impairments that meet or medically equal the severity of one of the listed impairments.  Tr. 18.

The ALJ determined that Plaintiff maintained the RFC to perform a full range of work at all

exertional levels.  Tr. 19.  However, the ALJ found that Plaintiff is limited to completing only

simple tasks.  *Id.*

In formulating the RFC, the ALJ determined that Plaintiff's medically determinable

impairments could be expected to cause the alleged symptoms, but that Plaintiff's statements

concerning the intensity, persistence, and limiting effects were not entirely consistent with the

medical evidence of the record.  Tr. 20.  Specifically, the ALJ found that the medical evidence

indicated mild limitations in mental functioning and moderate limitations in concentration, but that

such symptoms improved with medication.  *Id.*  In regard to the opinion evidence of record, the

ALJ found, in pertinent part, that Tulio Ortega, M.D., Plaintiff's treating psychiatrist, who opined

that Plaintiff had numerous severe limitations including many areas of "seriously limited" functioning, would be given "little weight." Tr. 21. The ALJ determined that Dr. Ortega's treatment notes demonstrated "improvement in symptoms, with fair to normal mental status examination findings noted," and "good response to medication." *Id.* Moreover, in support of the little weight allocation the ALJ indicated that the opinion of Dr. Ortega appeared to be primarily based off Plaintiff's subjective complaints, "which are out of proportion with the objective findings and the record as a whole." Tr. 22. On the contrary, the ALJ afforded "moderate weight" to Susan Santarpia, Ph.D., the consultative psychological examiner who opined that Plaintiff had only mild limitations in performing complex tasks, but was otherwise able to follow and understand simple directions, perform simple tasks, maintain attention and concentration, a regular schedule, make decisions, and deal with stress. *Id.* Notably, the ALJ also afforded consideration to Plaintiff's subjective complaints noted by Dr. Santarpia as well as the treating source statement from Dr. Ortega, which supported moderate limitations in concentration, persistence, or pace. *Id.*

At steps four and five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform including, for example, her past relevant work as a Hand Packager. Tr. 22-23. As such, the ALJ found that Plaintiff was not disabled.

**II.    Analysis**

Plaintiff takes issue with the ALJ's decision on the basis that (1) the ALJ erred in failing to provide good reason to discount the opinion of Plaintiff's treating psychiatrist, Dr. Ortega, and (2) the ALJ erred in allocating moderate weight to the opinion of the consulting psychologist, Dr. Santarpia. Because this Court agrees that remand is required under Plaintiff's first argument, it does not address Plaintiff's other argument.

An ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."[4]   20 C.F.R. §§ 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons" for doing so.   *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).

Here, the ALJ failed to properly apply the above factors in assigning a designation of "little weight" to the opinion of Plaintiff's treating psychiatrist, Dr. Ortega.  *See* Tr. 21-22.  Plaintiff began treating with Dr. Ortega in 2015 and had been seen by other doctors in that same office since 2014.  Tr. 271.  In a 2018 Mental Impairment Questionnaire—which contained Dr. Ortega's opinions of Plaintiff's limitations that had been in place since 2013—Dr. Ortega opined that Plaintiff had extreme limitations in maintaining social functioning, marked limitations in activities of daily living and maintaining concentrating, persistence or pace, and approximately three

---

[4] These regulations were applicable at the time Plaintiff filed her claim.

episodes of decompensation within a 12 month period.  Tr. 327.  Dr. Ortega also anticipated Plaintiff to be absent from work more than four days per month due to her impairments or treatment.  Tr. 328.  He opined that Plaintiff's impairments caused her to be unable to meet competitive standards in maintaining attention for two hour segments, completing a normal work day without interruptions from symptoms, perform at a consistent pace without rest periods, accept instructions and respond appropriately, get along with co-workers, and deal with work stress.  Tr. 325.  In addition, Dr. Ortega found Plaintiff to be unable to meet competitive standards in understanding and remembering instructions, interacting with the general public, maintaining socially appropriate behavior, travel in unfamiliar places, and use public transportation.  Tr. 326. The ALJ discounted the opinion of Dr. Ortega because the "treatment notes generally appear[ed] to show improvement in symptoms," and the opinion seemed to be based on Plaintiff's subjective complaints, which the ALJ deemed to be "out of proportion with objective findings and the record as a whole."  Tr. 21-22.  Yet, the ALJ afforded some weight to Plaintiff's subjective complaints and the treating source statement from Dr. Ortega when it came to weighing Dr. Santarpia's opinion.  Tr. 22.  These are not "good" reasons for rejecting the opinion of Plaintiff's treating psychiatrist.

Plaintiff first argues that there are "no objective findings in psychology" for the ALJ to determine Plaintiff's subjective complaints were "out of proportion" from.  ECF 9-1 at 13.  In support, Plaintiff points to the Second Circuit's recent decision in *Stacey v. Comm'r of Soc. Sec.*, 799 F. App'x 7 (2d Cir. 2020), wherein the court noted that the "expectation that a psychological opinion be formed only after diagnostic testing is unrealistic."  *Id.* at 9.  Rather, the court made clear that medical diagnosis in the psychology field will "often be informed by the patient's subjective description of his or her symptoms."  *Id.* (citing *Green-Younger*, 335 F.3d at 107); *see*

*also Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("[P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist. . . ."). In response, the Commissioner contends that the phrase "objective findings," was simply meant to cover Dr. Ortega's and other treatment providers' mental examinations. ECF 13-1 at 12.

Even assuming the Commissioner is correct and that the "objective findings" mentioned by the ALJ was simply a reference to the medical records, the ALJ's conclusive finding that the opinion of Dr. Ortega was not supported by the medical evidence was insufficient pursuant to the required analysis set forth in 20 C.F.R. § 404.1527(c)(1)-(6) and *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). While the ALJ indeed recognizes the length and frequency of the treating relationship, acknowledges Dr. Ortega is a specialist, and correctly points out that there are examples of improvements in Plaintiff's symptoms, *see* Tr. 21, the ALJ failed to address many of the limitations Dr. Ortega references throughout his progress notes and provide sufficient rationale for ultimately applying "little weight" to the opinion. For example, in November 2016, while Dr. Ortega mentioned Plaintiff was "maintaining stability," he also mentioned that she was not yet at her baseline. Tr. 297. That same day, Plaintiff stated she felt "racy," and was noted to have fair attention and concentration due to the medication she was on. *Id.* A few months later, in February 2017, Plaintiff appeared to be nervous and anxious, she was pressured in her speech, and had some irritability. Tr. 321. Though her insight and judgment were fair, her attention and concentration were short, and she seemed to be psychologically rigid. *Id.* In May 2017, Plaintiff was noted as still struggling with her OCD, changes in her schedule and unpredictability were triggering anxiety and anger, and she was experiencing panic-like episodes. Tr. 339. Dr. Ortega observed mood liability, problems with anger and temper, and noted her insight and judgment could be better with more treatment. Tr. 339-40. In March 2018, Dr. Ortega noted that Plaintiff worried excessively

and tended to be anxious with occasional panic attacks.  Tr. 334.  Moreover, in June 2018, Dr. Ortega noted that Plaintiff still struggled to leave the house, she was socially isolated and seclusive, struggled with change, and was not able to function well when things were not scheduled.  Tr. 349. In those instances, Dr. Ortega noted Plaintiff gets very overwhelmed, nervous, anxious, and it puts her into panic episodes.  *Id.*  He also noted that, despite her medication, Plaintiff's attention and concentration was "fair to short."  *Id.*

As a general matter, "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and there is no "absolute bar to crediting only portions of medical source opinions."  *Younes v. Colvin*, No. 14-cv-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).  Yet, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *Dioguardi*, 445 F. Supp. 2d at 297 (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, *7 (1996)).  Accordingly, an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions.  *See Younes*, 2015 WL 1524417, at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence, supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighing portions of the same-source opinions differently"); *Phelps v. Colvin*, No. 12-cv-976S, 2014 WL 122189, at *4 (W.D.N.Y. Jan 13, 2014) ("The selective adoption of only the least supportive portions of a medical source's statements is not permissible") (internal quotations and  brackets omitted); *Caternolo v. Astrue*, No. 11-CV-6601(MAT), 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("[I]t is a fundamental tenet of

Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (internal quotations omitted) (collecting cases); *Searles v. Astrue*, No. 09-CV-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) ("An ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified.").

The ALJ's failure to discuss such symptoms and to reconcile those numerous examples of Plaintiff's persistent symptoms with the conclusion that Plaintiff was "stable" and was "responding well" to her medications in applying "little weight" to Dr. Ortega's opinion was error. *See Mojbel v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 199, 203 (W.D.N.Y. 2019) (finding an ALJ's conclusion to reject the treating physician's opinion improper where the ALJ made the conclusory statement that the opinion was inconsistent with the medical record but failed to discuss specific medical findings and cited generally to the three years' worth of treatment records); *Whiteside v. Colvin*, No. 15-CV-6574, 2017 WL 159134, at *2 (W.D.N.Y. Jan. 13, 2017) (a conclusive determination that the treating psychiatrist's opinion was "inconsistent with the stable medical status examinations" was insufficient rationale to discount the opinion); *Lopez-Tiru v. Astrue*, No. 09-CV-1638 ARR, 2011 WL 1748515, at *4 (E.D.N.Y. May 5, 2011) (violation of the treating physician rule where the ALJ rejected the physician's opinion on the conclusory basis that the opinion was based on subjective complaints and not supported by the record). *But see Martinez Reyes v. Comm'r of Soc. Sec.*, No. 18-CV-0394-MJR, 2019 WL 3369255, at *5 (W.D.N.Y. July 26, 2019) (affirming an ALJ's decision where the ALJ explained in detail the conflicting evidence of the record and plaintiff's treating physician's opinion of impairments).

Indeed, as Plaintiff points out, the ALJ cannot simply pick out "a few isolated instances of improvement over a period of months or years and [] treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting *Garrison v.*

*Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (internal quotations omitted)); *see also Olczak v. Comm'r of Soc. Sec.*, No. 18-CV-0173-JWF, 2019 WL 3891579, at *3 (W.D.N.Y. Aug. 19, 2019) (the ALJ's determination that the treating physicians records were "not supported by examinations which were within normal limits" and were "not supported by substantial medical evidence" was insufficient "good reason" for allocating little weight to the opinion and demonstrated improper cherry picking of records). In fact, it is well recognized, especially in the case of mental health, that there will be cycles of improving and declining symptoms, and the courts have stressed the importance of weighing this evidence in reaching a final decision on a plaintiff's disability. *See, e.g.*, *Estrella*, 925 F.3d at 98 (noting the importance of "grappling" with the fluctuating state of mental health in rendering an opinion as to which medical opinion will be given what amount of "weight"); *Ferraro v. Saul*, 806 F. App'x 13, 16 (2d Cir. 2020) (discussing the importance of fully evaluating treating physicians opinions in the context of mental illness where a one-time visit is not always indicative of the overall health of the plaintiff); *see also Aurilio v. Berryhill*, No. 3:18-cv-00587 (MPS), 2019 WL 4438196, at *3 (D. Conn. Sept. 16, 2019) (noting that "periodic reports of feeling better" in regards to depression and anxiety symptoms, "do not undermine" a plaintiff's disability claims). The ALJ simply failed to do so here.

The Commissioner insists that under a "searching review of the record," the Court will find that "the ALJ had good reason for its weight assessment, the weight assessment was supported by the record, and the ALJ considered the *Burgess* factors, even if not explicitly." ECF No. 13-1 at 11. The Commissioner's argument borders on *post hoc* rationalization. The evidence and rationale that the Commissioner offers may have supported the conclusion that Dr. Ortega's opinion should receive little weight; however, the Commissioner cannot point to where in the ALJ's decision such a rationale was applied nor to where the clearly conflicting medical evidence from Dr. Ortega was

discussed.  When the Court is presented with reasons not considered by the ALJ in applying the

treating physician rule, the Court is "not permitted to accept the post-hoc rationalizations for the

ALJ's determination."  *White v. Saul*, 414 F. Supp. 3d 377, 385 (W.D.N.Y. 2019).

The ALJ's failure to properly weigh Dr. Ortega's opinion was not harmless error.  Contrary

to the opinion of Dr. Ortega, the RFC permitted Plaintiff to work at all exertional levels, limited

to simple tasks.  Tr. 19.  Dr. Ortega's opinion however, indicated that Plaintiff has a "complete

inability to function independently outside" of her home.  Tr. 327 (emphasis omitted).  Indeed, Dr.

Ortega opined Plaintiff would be absent from work more than four days a month.  Tr. 328.  Had

the ALJ incorporated Dr. Ortega's opinion into the RFC, the ALJ may have ultimately deemed

Plaintiff disabled, as the vocational expert testified being absent from work two or more days per

month would "preclude all work."  Tr. 46.  Based on the reasons discussed, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is

GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 13, is DENIED,

and the matter is REMANDED to the Commissioner for further administrative proceedings

consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court

shall enter judgment and close this case.

IT IS SO ORDERED.

Dated:  November 23, 2020
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

11